1  SUE CAMPBELL
   Attorney at Law, State Bar Number 98728
2  1155 North First Street, Suite 101
   San Jose, California 95112
3  Phone: (408) 277-0648
   Fax:    (408) 938-1035
4
   Attorney for Plaintiffs
5

6

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10  MIKE GELLER AND MIKE YARBROUGH      )   CASE NO.:  C07 04763 JF RS
    AS TRUSTEES OF THE INTERNATIONAL    )
11  BROTHERHOOD OF ELECTRICAL           )   DECLARATION OF
    WORKERS LOCAL 302 HEALTH AND        )   SUE CAMPBELL IN
12  WELFARE AND PENSION TRUST FUNDS,    )   SUPPORT OF DEFAULT
                                        )
13                  Plaintiff,          )
                                        )
14  vs.                                 )   DATE:    May 9, 2008
                                        )   TIME:    9:00 A.M.
15  3-D TECHNICAL SERVICES, INC.,       )   PLACE:   Courtroom 3, 5th Floor
    a California Corporation,           )   JUDGE:   Hon. Jeremy Fogel
16                                      )
                    Defendant.          )
17  _____)

18       I, SUE CAMPBELL, do declare as follows:

19       1. I am the collection attorney for the I.B.E.W. Local 302 Trust Funds (hereinafter referred

20  to as "Trust Funds"). Pursuant to the terms of my agreement with the Trust Funds, I bill the

21  trust funds $195.00 per hour for my legal services.

22       2. I have reviewed my billing slips for the Trust Funds and verify that attorney's fees

23  for the above referenced lawsuit through default judgment are $3,168.75, including an

24  additional three hours for the filing of this request for default judgment. Costs are $428.00.

25       3. The amount of fees requested pursuant to the default judgment against Defendant 3-D

26  TECHNICAL SERVICES, INC., a California Corporation, are $3,168.75 and are reasonable

27  fees. A copy of the bills to the I.B.E.W. Local 302 Trust Funds showing attorney's fees and

28  costs are attached hereto as Exhibit "A".

                                        1

                         DECLARATION OF SUE CAMPBELL

1    4. Defendant 3-D TECHNICAL SERVICES, INC., a California Corporation, submitted

2    transmittals for the months of December 2006 through May 2007 totaling $30,469.10. A copy

3    of the transmittals are attached as Exhibit "B". After the filing of the lawsuit, Defendant made

4    payment on those delinquent transmittals, however, liquidated damages are due pursuant to

5    contract on the delinquent fringe benefits.

6    Pursuant to the collective bargaining agreement, liquidated damages of 15% are due for

7    December 2006 through May 2007 delinquent fringe benefits.  However, there is a conflict

8    between the collective bargaining agreement which states 15% liquidated damages are due, and

9    the health and welfare trust agreement which states 10% liquidated damages are due, as well

10   as 8% interest.  Consequently, the Trust Funds have charged liquidated damages at 10%, as

11   stated in the complaint.  Plaintiffs are requesting interest at 8% in the amount of $601.20,

12   instead of the 10% interest requested in the complaint.   A copy of the pertinent sections of the

13   trust document is attached as Exhibit "C".

14   The interest is calculated as follows:

15   8% on $30,469.10 (for a daily rate of $6.68) from June 15, 2007 through September 13,

16   2007 (90 days), for a total due in interest of $601.20.

17   In December 2001,  the Trust Funds conducted a study to determine the reasonableness

18   of liquidated damages charged by the Trust Funds.  The Trust Funds also periodically review

19   their collection procedures and costs to determine if the ten percent liquidated damages being

20   charged is reasonable. A true and correct copy of that study, as well as a copy of the collection

21   procedures, is attached to this declaration as Exhibit "D". Both of these documents are

22   incorporated by reference as evidence of the reasonableness of the liquidated damages

23   requested. The final collection document was prepared and presented by my office and is a true

24   and correct copy of that study.

25   I declare under penalty of perjury that the foregoing is true and correct of my own

26   knowledge.  Executed this ___27___ day of March, 2008, at San Jose, California.

27

28                                        SUE CAMPBELL

2

DECLARATION OF SUE CAMPBELL

## Sue Campbell
Attorney at Law
1155 N. First Street, Suite 101
San Jose, CA  95112

*Invoice submitted to:*
I.B.E.W. Local 302 Trust Funds
c/o Mr. Mike Geller
Contra Costa Chapter of NECA
1024 Court Street
Martinez CA 94553

February 25, 2008

Professional Services

|  |  | Hours | Amount |
|---|---|---|---|
| **3-D TECHNICAL SERVICES** | | | |
| 2/6/2008 | Telephone Conference/3D Technical | 0.25 | |
| 1/17/2008 | Correspondence/HCC Surety Company putting bond claim in abeyance | 0.25 | |
| 1/29/2008 | Telephone Conference/Laramie re status of payments | 0.15 | |
| 1/15/2008 | Telephone Conference/Laramie Dorsey | 0.15 | |
| | Review Correspondence/HCC Surety re status of claim | 0.05 | |
| 1/10/2008 | Telephone Conference/Dan Farley, Karima Chin | 0.25 | |
| | SUBTOTAL: | [    1.10 | 214.50] |
| **ACS CONTROLS** | | | |
| 1/15/2008 | Delinquent Correspondence/ACS Controls, Certified Correspondence/Bond Company re bond claim | 0.60 | |
| 1/16/2008 | Prepare Summons and Complaint | 3.50 | |
| | Correspondence/Employees (2) requesting lien information, prepare lien declarations (2) | 0.50 | |
| 1/23/2008 | Review file, Telephone Conference/Joan re processing $7500 bond, Correspondence/All Area Electric with balance due after bond payment | 0.60 | |
| 1/29/2008 | Telephone Conference/ACS Controls | 0.35 | |
| 1/31/2008 | Review documentation from ACS Controls, Correspondence/Laramie with payment of March through July and October through December fringe benefits, Correspondence/Surety Company releasing bond, Correspondence/ACS Controls requesting balance due in liquidated damages | 1.00 | |
| 2/13/2008 | Review Correspondence/ACS Controls, Correspondence/Laramie at NECA with payment of liquidated damages for March thru Dec 2007 | 0.30 | |
| 2/7/2008 | Review Correspondence/Surety Company re bond claim status | 0.05 | |
| | SUBTOTAL: | [    6.90 | 1,345.50] |

EXHIBIT "A"

**Sue Campbell**
Attorney at Law
1155 N. First Street, Suite 101
San Jose, CA  95112

---

*Invoice submitted to:*
I.B.E.W. Local 302 Trust Funds
c/o Mr. Mike Geller
Contra Costa Chapter of NECA
1024 Court Street
Martinez CA 94553

January 17, 2008

Professional Services

|  |  | Hours | Amount |
|---|---|---|---|
| **3-D TECHNICAL SERVICES** | | | |
| 1/2/2008 | Review file, Prepare Case Management Conference Statement | 1.00 | |
| 1/3/2008 | Prepare Request for Entry of Default, efile with court | 0.75 | |
| | Review Correspondence/Bond Company, Review file and documentation for claim, Correspondence/Bond Company | 0.50 | |
| 1/8/2008 | Research new claim address for Harfford Fire Insurance, Telephone Conference/Hartford re claim | 0.50 | |
| | Certified Correspondence/The Hartford re fringe benefit bond claim | 0.35 | |
| | Review Order continuing Case Management Conference | 0.05 | |
| 1/2/2008 | Telephone Conference/Dan Farley, Telephone Conference/Surety Company | 0.50 | |
| 1/10/2008 | Telephone Conference/Dan Farley, Telephone Conference/Contractors License bond | 0.50 | |
| | SUBTOTAL: | [    4.15 | 809.25] |
| **MISCELLANEOUS** | | | |
| 12/20/2008 | Telephone Conference/Laramie re status of 3D Technical and California Electric | 0.15 | |
| | SUBTOTAL: | [    0.15 | 29.25] |
| | **For professional services rendered** | **4.30** | **$838.50** |

Additional Charges :

| COSTS | | | |
|---|---|---|---|
| 1/1/2008 | Service of Process re 3D Technical | | 78.00 |
| | SUBTOTAL: | [ | 78.00] |

## Sue Campbell
Attorney at Law
1155 N. First Street, Suite 101
San Jose, CA  95112

*Invoice submitted to:*
I.B.E.W. Local 302 Trust Funds
c/o Mr. Mike Geller
Contra Costa Chapter of NECA
1024 Court Street
Martinez CA 94553

December 20, 2007

Professional Services

|  |  | Hours | Amount |
|---|---|---|---|
| **3-D TECHNICAL SERVICES** | | | |
| 11/20/2007 | Review file, calculate amounts due, Correspondence/Debbie Farley at 3-D re payment schedule | 0.75 | |
| 11/22/2007 | Telephone Conference/3D Technical Services, Correspondence/3D with payment schedule | 0.50 | |
| | SUBTOTAL: | [ 1.25 | 243.75] |
| **ACS CONTROLS** | | | |
| 11/9/2007 | Correspondence/ACS Controls | 0.25 | |
| 11/22/2007 | Telephone Conference/ACS Controls, Review Correspondence/ACS, Review transmittals | 0.35 | |
| | SUBTOTAL: | [ 0.60 | 117.00] |
| **MISCELLANEOUS** | | | |
| 11/20/2007 | Correspondence/Laramie at NECA with liquidated damages payment from 3D Electrical Services | 0.25 | |
| 11/22/2007 | Telephone Conference/Joan re 3D, ACS and California Electric | 0.25 | |
| | SUBTOTAL: | [ 0.50 | 97.50] |
| | **For professional services rendered** | **2.35** | **$458.25** |
| | **Previous balance** | | **$2,846.00** |
| 12/20/2007 | Payment - Thank You. Check No. 010448 | | ($711.75) |
| 12/20/2007 | Payment - Thank You | | ($2,134.25) |
| | **Total payments and adjustments** | | **($2,846.00)** |

408-277-0648

### Sue Campbell
Attorney at Law
1155 N. First Street, Suite 101
San Jose, CA 95112

Invoice submitted to:
I.B.E.W. Local 302 Trust Funds
c/o Mr. Mike Geller
Contra Costa Chapter of NECA
1024 Court Street
Martinez CA 94553

November 26, 2007

Professional Services

|  |  | Hours | Amount |
|---|---|---|---|
| **3-D TECHNICAL SERVICES** | | | |
| 11/2/2007 | Telephone Conference/3D Technical | 0.25 | |
| 10/3/2007 | Telephone Conference/3D Technical | 0.25 | |
| 10/17/2007 | Telephone Conference/Debbie and 3D | 0.25 | |
| 11/5/2007 | Telephone Conference/3D Technical, Review Correspondence re payment schedule | 0.25 | |
| 10/23/2007 | File Original Summons and Proof of Service with court | 0.10 | |
| 10/4/2007 | Prepare service of process instructions for service on 3-D Technical | 0.25 | |
| 10/3/2007 | Review Correspondence/HCC Surety Co. re bond claim | 0.05 | |
| | SUBTOTAL: | [ 1.40 | 273.00] |
| **ACS CONTROLS** | | | |
| 11/5/2007 | Telephone Conference/ACS Controls re August and September | 0.25 | |
| | SUBTOTAL: | [ 0.25 | 48.75] |
| **MISCELLANEOUS** | | | |
| 10/10/2007 | Telephone Conference/Joan Courtney, Telephone Conference/Dan Farley | 0.50 | |
| 10/4/2007 | Liquidated Damages Correspondence/3 D Electrical Services, Tucker Technology, All Area Construction, Auburn Power and Columbia Electric | 0.75 | |
| 11/11/2007 | Telephone Conference/3D, Telephone Conference/Joan, Telephone Conference/ACS Controls | 0.75 | |
| | SUBTOTAL: | [ 2.00 | 390.00] |
| | **For professional services rendered** | 3.65 | **$711.75** |
| | **Previous balance** | | **$2,134.25** |

# Sue Campbell

Attorney at Law
1155 N. First Street, Suite 101
San Jose, CA  95112

*Invoice submitted to:*
I.B.E.W. Local 302 Trust Funds
c/o Mr. Mike Geller
Contra Costa Chapter of NECA
1024 Court Street
Martinez CA 94553

**NOTE:  This bill covers a two month period.**

October 04, 2007

Professional Services

|  |  | Hours | Amount |
|---|---|---|---|
| **3-D TECHNICAL SERVICES** | | | |
| 9/13/2007 | Certified Correspondence/Hartford Fire re fringe benefit bond clai | 0.35 | |
| 8/13/2007 | Telephone Conference/3D Technical | 0.25 | |
| 9/5/2007 | Telephone Conference/Debbie at 3D Technical | 0.25 | |
| 9/13/2007 | Certified Correspondence/American Contractors Indemnity Company re claim on contractors license bond | 0.35 | |
| 9/14/2007 | Prepare Summons and Complaint | 3.50 | |
| 9/13/2007 | Fax request for employee addresses to Joan at Union | 0.15 | |
| 9/14/2007 | Correspondence/Employees with lien declarations (3) | 0.50 | |
| | SUBTOTAL: | [ 5.35 | 1,043.25] |
| **ALL AREA ELECTRIC** | | | |
| 8/3/2007 | Correspondence/All Area Electric re delinquent amounts due, cashj bond and stop notice | 0.25 | |
| 8/4/2007 | Telephone Conference/All Area Electric, Telephone Conference/Kramar Construction re payment | 0.50 | |
| | SUBTOTAL: | [ 0.75 | 146.25] |
| **MISCELLANEOUS** | | | |
| 8/13/2007 | Telephone Conference/Yamas Controls | 0.25 | |
| 8/3/2007 | Correspondence/Mike Geller re delinquent contractor/liquidated damages procedures | 0.25 | |
| 8/21/2007 | Review Correspondence/Tucker Technology, Correspondence/Tucker Technology re liquidated damages | 0.25 | |
| 8/1/2007 | Telephone Conference/Joan, Telephone Conference/Laramie, Telephone Conference/3-D | 0.75 | |
| 8/8/2007 | Telephone Conference/NECA, Telephone Conference/Yamas Controls, Telephone Conference/3-D Technical | 0.50 | |

I.B.E.W. Local 302 Trust Funds

Page    2

| | Hours | Amount |
|---|---|---|
| 8/9/2007 Prepare Delinquent Correspondence/3-D Technical, Yamas Controls, All Area, Tucker, Columbia and Young Electric, Prepare Liquidated Damages Correspondence/Tucker | 1.05 | |
| SUBTOTAL: | [ 3.05 | 594.75] |
| **For professional services rendered** | **9.15** | **$1,784.25** |

Additional Charges :

COSTS

| | | |
|---|---|---|
| 9/17/2007 Filing Fee re 3-D Technical Services | | 350.00 |
| SUBTOTAL: | [ | 350.00] |
| **Total costs** | | **$350.00** |
| | | |
| **Total amount of this bill** | | **$2,134.25** |
| **Previous balance** | | **$594.75** |
| 9/4/2007 Payment - Thank You. Check No. 010373 | | ($594.75) |
| **Total payments and adjustments** | | **($594.75)** |
| | | |
| Balance due | | $2,134.25 |

SEP-11-2007  15:31                                                          P.08/08

PLEASE TYPE OR PRINT FIRMLY - THIS IS A 4 PART FORM.

NOTE. CONTRACTOR KEEP LAST SHEET ONLY - FORWARD OTHERS TO LOCATION SPECIFIED BELOW.

MAIL TO: CONTRA COSTA COUNTY ELECTRICAL INDUSTRY ACCOUNTS, FILE 2022, PO BOX 6000, SAN FRANCISCO, CA 94160 BY 20th OF MONTH

# MONTHLY FRINGE BENEFIT TRANSMITTAL FOR HOURS WORKED
## JUNE 1, 2006 - MAY 31, 2007
### DUES, HEALTH, RETIREMENT, ELECTRICAL INDUSTRY, NEBF & NECA ACCOUNTS

504

EMPLOYER'S NAME and ADDRESS (Please Type or Print)

Name: 3D Technical Services, Inc.
Address: 950 Detroit Avenue #15
City: Concord, CA 94518
Telephone #: (925) 691-5543

I.B.E.W. LOCAL NO. WHERE WORK IS PERFORMED: **302**

EMPLOYER'S FEDERAL REGISTRATION NO.: 68-0481884

TOTAL NUMBER EMPLOYED THIS PERIOD: **3**

Daily Cash Journeyman's Wage Rate Per Hour $: **$43.51**

This Transmittal Covers All Payroll Weeks Ending in Calendar MONTH of: **December**  YEAR: **2006**

INDICATE NUMBER OF PAYROLL WEEKS COVERED BY THIS REPORT: **4**

CLASSIFICATIONS TO BE USED IN COLUMN NO. 3

| 1. Building Construction | 2. Motor Repair | 3. Sign | 4. Communications | 5. Maintenance | 6. Apprentice | 7. Outside Constr. | 26. Other (including Non-Bargaining Administration) | 17. Alumni | Outside 8. Apprentice |
|---|---|---|---|---|---|---|---|---|---|

| (1) SOCIAL SECURITY NO. | (2) NAME OF EMPLOYEE (Type or Print) LAST NAME, FIRST NAME & MIDDLE INITIAL | (3) CLASS | (4) TOTAL CLOCK HOURS | (5) GROSS EARNINGS | (6) RETIREMENT CONTRIBUTION DAYS | (7) RETIREMENT TRUST CONTRIBUTION |
|---|---|---|---|---|---|---|
| ▬ | Crawter, Jonathan B. | 1 | 114 | 5124.30 | 8.— | 912.00 |
| ▬ | Enoch, Duncan A. | 1 | 148.5 | 7089.48 | 6.— | 891.00 |
| ▬ | Hubbardfield, Robert H. | 1 | 144.5 | 6101.97 | 6.— | 867.00 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## TOTALS

The employees' reporting herein as payroll must be bona fide by the National Employees Benefit Agreement and listed for the National Electrical Benefit Fund and agrees it ensures the required contributions to the Fund as provided therein. The employer acknowledges having received a copy of the above Agreement. The employer further verifies that the contributions made in the report is a full and accurate statement of hours worked and wages earned by all employees subject to employer contributions pursuant to Article B of this Agreement. The employer further certifies that contributions are made on behalf of non-bargaining unit employees if any, enrolled in such accordance with Article C of this Agreement and it is either covering all such non-bargaining unit employees or already employees only except those listed. The employer further certifies that it is covering on behalf of bargaining unit employees under Article 5 of the Agreement, either all employees of this organization in named employees only are covered, except those who may be excluded pursuant to Section C-3 of the NEBF Agreement.

3D Technical Services, Inc.  X _____
PRINT NAME                        SIGNATURE

MAKE CHECKS PAYABLE TO ELECTRICAL INDUSTRY ACCOUNTS (L302)

TRANSMITTALS RECEIVED AFTER 20TH DAY OF MONTH ARE SUBJECT TO LIQUIDATED DAMAGES AS PER ARTICLE III SECTION 5A

CHECK NUMBER

FOR USE WHEN LIQUIDATED DAMAGES ARE PAYABLE TO TRUST FUND FOR DELINQUENT TRANSMITTAL.

DUES AND 1/2%: 1007.37
HEALTH & WELFARE & FRINGE ALLOWANCE: 3724.02
RETIREMENT PLAN: 1758.00
ELECTRICAL INDUSTRY APPRENTICE & TRUST CHARGE A & 1/2%: 315.26
N E B F: 4.08
NATIONAL PENSION: 549.49

TOTAL P.08

EXHIBIT B. 25
$7,358.25

SEP-11-2007  15:31                                                                    P.07/08

PLEASE TYPE OR PRINT FIRMLY - THIS IS A 4 PART FORM.

**NOTE: CONTRACTOR KEEP LAST SHEET ONLY - FORWARD OTHERS TO LOCATION SPECIFIED BELOW.**

**MAIL TO: CONTRA COSTA COUNTY ELECTRICAL INDUSTRY ACCOUNTS  FILE NO 28, PO BOX 5900  SAN FRANCISCO, CA 94139 BY 15th OF MONTH**

# MONTHLY FRINGE BENEFIT TRANSMITTAL FOR HOURS WORKED
## JUNE 1, 2006 - MAY 31, 2007
# DUES, HEALTH, RETIREMENT, ELECTRICAL INDUSTRY, NEBF & NECA ACCOUNTS

504

| EMPLOYER'S NAME and ADDRESS (Please Type or Print) | |
|---|---|
| Name | 3D Technical Services, Inc. |
| Address | 950 Detroit Avenue #15 |
| City | Concord, CA 94518 |
| Telephone # | (925) 681-5543 |

I.B.E.W. LOCAL NO. WHERE WORK IS PERFORMED **302**

EMPLOYER'S FEDERAL REGISTRATION NO. **68-0481884**

TOTAL NUMBER EMPLOYED THIS PERIOD ► **2**

IBEW Const. Journeyman's Wage Rate Per Hour $ **$43.51**

This Transmittal Covers All Payroll Weeks Ending In Calendar MONTH of **January** YEAR **2007**

INDICATE NUMBER OF PAYROLL WEEKS COVERED BY THIS REPORT **4**

CLASSIFICATIONS TO BE USED IN COLUMN NO. 3

1 Building Construction    2 Motor Repair    3 Sign    4 Communications    5 Maintenance    6B Other (Including Non-Bargaining Admin.) 6c Application    7 Outside Const.    8 Outside Apprentice

| (1) SOC. SECURITY NO. | (2) NAME OF EMPLOYEE (Type or Print) LAST NAME, FIRST NAME & MIDDLE INITIAL | (3) CLASS | (4) TOTAL CLOCK HOURS | (5) GROSS EARNINGS | (6) RETIREMENT CONTRIBUTION RATE | (7) RETIREMENT TRUST CONTRIBUTION |
|---|---|---|---|---|---|---|
| ■■■■■ | Crawler, Jonathan B. | 1 | 162 | 8169.63 | 8.- | 1296.00 |
| ■■■■■ | Enoch, Duncan A. | 1 | 125 | 6308.10 | 6.- | 750.00 |

**TOTALS**

Each employer reporting herein represents that it is bound by the identical Employee Benefit Agreement and Trust for the National Electrical Benefit Fund and agrees to make the required contributions to this Fund as provided therein. This employer acknowledges having received a copy of the above Agreement. The employer certifies that the information contained in this report is a full and accurate statement of hours worked and wages earned of all employees subject to the above Fund. Such employer further certifies that it contributions are made on behalf of all contributing bargaining unit employees, it is making such contributions with Article II of the Agreement and is either covering all such non-bargaining unit employees or stating employees only, except those who may be excluded pursuant to Section 6.3 of the Agreement. The employer further certifies that it is reporting on behalf of and remits required contributions as defined in Article II of the Agreement, either all employees of the organization or all such employees only and covered employees only, may be excluded pursuant to Section 6.3 of the NEBF Agreement.

**3D Technical Services, Inc.** X _____ SIGNATURE

FIRM NAME

MAKE CHECKS PAYABLE TO: ELECTRICAL INDUSTRY ACCOUNTS (L302)

TRANSMITTALS RECEIVED AFTER 20TH DAY OF MONTH ARE SUBJECT TO LIQUIDATED DAMAGES AS PER ARTICLE III SECTION 5A

CHECK NUMBER _____  DATE _____  $ _____

FOR USE WHEN LIQUIDATED DAMAGES ARE PAYABLE TO TRUST FUND FOR DELINQUENT TRANSMITTAL.

| DUES & CHECKOFF 5% of Total Columns 5a | 796.01 |
|---|---|
| HEALTH & WELFARE & RETIREE ALLOWANCE (Total Column 4 x $9.12) | 2026.07 |
| RETIREMENT PLAN (Total Column 7) | 2046.00 |
| ELECTRICAL INDUSTRY APPRENTICESHIP (Total Columns 4 x .75) | 215.27 |
| NEBF 3% (Total Columns 4 x $.001) | 2.89 |
| NECA NATIONAL PENSION (.75% of Column 5a) | 234.18 |

**$6,120.42**

SEP-11-2007  15:31                                                      P.06/08

PLEASE TYPE OR PRINT FIRMLY - THIS IS A 4 PART FO!

**NOTE: CONTRACTOR KEEP LAST SHEET ONLY • FORWARD OTHERS TO LOCATION SPECIFIED BELOW.**

MAIL TO : CONTRA COSTA COUNTY ELECTRICAL INDUSTRY ACCOUNTS   FILE 1025 PO BOX 6000 SAN FRANCISCO CA 94143 BY 15th OF MONTH

# MONTHLY FRINGE BENEFIT TRANSMITTAL FOR HOURS WORKED
## JUNE 1, 2006 - MAY 31, 2007
### DUES, HEALTH, RETIREMENT, ELECTRICAL INDUSTRY, NEBF & NECA ACCOUNTS

*504*

EMPLOYER'S NAME and ADDRESS (Please Type or Print)

Name       3D Technical Services, Inc.
Address    950 Detroit Avenue #1E
City:        Concord, CA 94518
Telephone #

(925) 691-5543

I.B.E.W. LOCAL NO.
WHERE WORK IS PERFORMED   **302**

EMPLOYER'S FEDERAL
REGISTRATION NO.   68-0481884

TOTAL NUMBER
EMPLOYED
THIS PERIOD ➤   **2**

Dues, Health,
Journeyman
Wage Rate
Per Hour $   **$43.51**

This Transmittal Covers All Payroll Weeks Ending in Calendar MONTH
OF **February**      YEAR **2007**

INDICATE NUMBER OF PAYROLL
WEEKS COVERED BY THIS REPORT   **4**

CLASSIFICATIONS TO BE USED IN COLUMN NO. 3

| (1) SOCIAL SECURITY NO. | (2) NAME OF EMPLOYEE (Type or Print) LAST NAME, FIRST NAME & MIDDLE INITIAL | (3) CLASS | (4) TOTAL CLOCK HOURS | (5) GROSS EARNINGS | (6) RETIREMENT CONTRIBUTION RATE | (7) RETIREMENT TRUST CONTRIBUTION |
|---|---|---|---|---|---|---|
| ▓▓▓▓▓▓ | Crawer, Jonathan B. | 1 | 137 | 7124.55 | 8.— | 1096.00 |
| ▓▓▓▓▓▓ | Enoch, Duncan A. | 1 | 29 | 1666.76 | 6.— | 174.00 |
| | | | | | | |
| | | | | | | |

**TOTALS**

3D Technical Services, Inc.  X _____
FIRM NAME                                    SIGNATURE

MAKE CHECKS PAYABLE TO:
ELECTRICAL INDUSTRY ACCOUNTS (L302)

TRANSMITTALS RECEIVED AFTER 20TH DAY OF MONTH
ARE SUBJECT TO LIQUIDATED DAMAGES AS PER
ARTICLE III SECTION 5A

CHECK NUMBER

FOR USE WHEN LIQUIDATED
DAMAGES ARE PAYABLE TO
TRUST FUND FOR DELIN-
QUENT TRANSMITTAL.

DUES, CHECK-OFF
(Totals of Column 5)   408.52

HEALTH & WELFARE
& RETIREE ALLOWANCE
(Total Column 4 x $9.14)   1518.90

H. RETIREMENT
PLAN
(Total Column 7)   1270.00

PLE. INDUST.
INDUSTRY APPRENTICE
(Total Column 4 x $.75)   124.50

N E C A
(Total Column 4 x $.01)   1.66

N E B F
National Pension
(Total Column 4)   263.75

$ 3662.33

SEP-11-2007  15:30

PLEASE TYPE OR PRINT FIRMLY • THIS IS A 4 PART FOR...

NOTE: CONTRACTOR KEEP LAST SHEET ONLY • FORWARD OTHERS TO LOCATION SPECIFIED BELOW

MAIL TO: CONTRA COSTA COUNTY ELECTRICAL INDUSTRY ACCOUNTS (L302), P.O. BOX ....., SAN FRANCISCO, CA 94120 BY END OF MONTH

# MONTHLY FRINGE BENEFIT TRANSMITTAL FOR HOURS WORKED
## JUNE 1, 2006 - MAY 31, 2007
### DUES, HEALTH, RETIREMENT, ELECTRICAL INDUSTRY, NEBF & NECA ACCOUNTS

EMPLOYER'S NAME and ADDRESS (Please Type or Print)

Name: 3D Technical Services, Inc.
Address: 950 Detroit Avenue #15
City: Concord, CA 94518
Telephone #: (925) 691-5543

I.B.E.W. LOCAL NO. WHERE WORK IS PERFORMED: 302
EMPLOYER'S FEDERAL REGISTRATION NO.: 68-0481004
TOTAL NUMBER EMPLOYED THIS PERIOD: 2

Only Certain Journeyman's Wage Rate Per Hour $: **$43.51**

This Transmittal Covers All Payroll Weeks Ending in Calendar MONTH of: March  YEAR: 2007
WEEKS COVERED BY THIS REPORT: 4

CLASSIFICATIONS TO BE USED IN COLUMN NO. 3

| 1 Building Construction | 2 Minor Repair | 3 Sign | 4 Communications | 5 Maintenance | 26 Other (including Non-Bargaining Admin.) | 27 Alumni Inside Apprentice | 8 Outside Const. | 9 Outside Apprentice |
|---|---|---|---|---|---|---|---|---|

| (1) SOCIAL SECURITY NO. | (2) NAME OF EMPLOYEE (Type or Print) LAST NAME, FIRST NAME & MIDDLE INITIAL | (3) CLASS | (4) TOTAL CLOCK HOURS | (5) GROSS EARNINGS | (6) RETIREMENT CONTRIBUTION RATE | (7) RETIREMENT THIS CONTRIBUTION |
|---|---|---|---|---|---|---|
| ▉▉▉▉ | Crowder, Jonathan B. | 1 | 122.5 | 5607.49 | 8.— | 980.00 |
| ▉▉▉▉ | Enoch, Duncan A. | 1 | 8.5 | 410.82 | 6.— | 51.00 |
| | | | | | | |

## TOTALS

3D Technical Services, Inc.  X

SIGNATURE

MAKE CHECKS PAYABLE TO: ELECTRICAL INDUSTRY ACCOUNTS (L302)

TRANSMITTALS RECEIVED AFTER 20TH DAY OF MONTH ARE SUBJECT TO LIQUIDATED DAMAGES AS PER ARTICLE III SECTION 5A

CHECK NUMBER

DATE

FOR USE WHEN LIQUIDATED DAMAGES ARE PAYABLE TO TRUST FUND FOR DELINQUENT TRANSMITTAL

| DUES & CHECK-OFF | 531 | 02 |
| HEALTH & WELFARE & HEALTH ALLOWANCE | 98 | 26 |
| RETIREMENT PLAN | 1031 | 00 |
| ELECTRICAL INDUSTRY APPRENTICE | 98 | 26 |
| N.E.B.F. | 1 | 32 |
| NECA | 180 | 54 |

$ 1,740.4

SEP-11-2007  15:30

PL___ TYPE OR PRINT FIRMLY - THIS IS A 4 PART F

NOTE  CONTRACTOR KEEP LAST SHEET ONLY - FORWARD OTHERS TO LOCATION SPECIFIED BELOW.

MAIL TO: CONTRA COSTA COUNTY ELECTRICAL INDUSTRY ACCOUNTS. FILE W*25  P.O. BOX 7000  SAN FRANCISCO, CA 94120 BY 15th OF MONTH

# MONTHLY FRINGE BENEFIT TRANSMITTAL FOR HOURS WORKED
## JUNE 1, 2006 - MAY 31, 2007
# DUES, HEALTH, RETIREMENT, ELECTRICAL INDUSTRY, NEBF & NECA ACCOUNTS

EMPLOYER'S NAME and ADDRESS (Please Type or Print)

Name  3D Technical Services
Address  950 Detroit Avenue #1E
City  Concord, CA 94518
Telephone #  (925) 691-5543

I.B.E.W. LOCAL NO. WHERE WORK IS PERFORMED  **302**

EMPLOYER'S FEDERAL REGISTRATION NO.  68-0481004

TOTAL NUMBER EMPLOYED THIS PERIOD — ►  **2**

Unit Cover. Approximate Fr. Wage Rate Per Hour ‡  **$43.51**

This Transmittal Covers All Payroll Weeks Ending in Calendar MONTH OF **April**  YEAR **2007**

INDICATE NUMBER OF PAYROLL WEEKS COVERED BY THIS REPORT  **4**

CLASSIFICATIONS TO BE USED IN COLUMN NO. 3

| Building Constru Jrm | 3 Motor Repair | 5 Sign | 4 Communications | 5 Maintenance | 26 Other (including Non-Bargaining Admin.) 6 Apprentice | 27 "Alumni" Inside Cabling Const. | Outside Apprentice |

| (1) SOCIAL SECURITY NO | (2) NAME OF EMPLOYEE (Type or Print) LAST NAME, FIRST NAME & MIDDLE INITIAL | (3) CLASS | (4) TOTAL CLOCK HOURS | (5) GROSS EARNINGS | (6) RETIREMENT CONTRIBUTION RATE | (7) RETIREMENT TRUST CONTRIBUTION |
|---|---|---|---|---|---|---|
| | Crowder, Jonathan B. | 1 | 168.5 | 8561.68 | 8. — | 1348.00 |
| | Eneon, Duncan A. | 1 | 20 | 939.00 | 6. — | 120.00 |

## TOTALS

This employer, upon being named account etc. that it is bound by the Restated Employees Benefit Agreement and Trust for the National Electrical Benefit Fund and agrees to make the required contributions to the Fund as provided thereat. This employer acknowledges having received a copy of the above Agreement. The employer certifies that the information contained in this report is a full and complete statement of hours worked and wages earned of all employees subject to employer contributions pursuant to Article II of the Agreement. The employer further certifies that it contributes the above on behalf of non-bargaining unit employees, if the making each contribution, in accordance with Article 8 of the Agreement and it is either covering all such non-bargaining unit employees or above none, and (if above none) who may be excluded pursuant to Section 6.3 of the Agreement. The employer further certifies that it is reporting on behalf of the bargaining unit employees as defined in Article 8 of this Agreement, either all employees of the organization or alumni employees only are covered, except those who may be excluded per count in Section 6.3 of the NEBF Agreement.

3D Technical Services, Inc.  X _____
PRINT NAME                        SIGNATURE

MAKE CHECKS PAYABLE TO
ELECTRICAL INDUSTRY ACCOUNTS (L302)
TRANSMITTALS RECEIVED AFTER 20TH DAY OF MONTH
ARE SUBJECT TO LIQUIDATED DAMAGES AS PER
ARTICLE III SECTION 5A

CHECK NUMBER _____
DATE _____

FOR USE WHEN LIQUIDATED DAMAGES ARE PAYABLE TO TRUST FUND FOR DELINQUENT TRANSMITTAL.

| | |
|---|---|
| DUES & CHECK OFF (1% or 1.5% of Gross) | 522.00 |
| HEALTH & WELFARE & RETIREE, 401 CHANGE (Local Schedule A.5 A-3) | 1724.78 |
| RETIREMENT PLAN | 1468.00 |
| NATIONAL ELECTRICAL INDUSTRY APPRENTICESHIP (Total Column 1 x .75) | 141.88 |
| N.E.C.A. (Total Column 1 x .15) | 1.89 |
| N.E.B.F. NATIONAL PENSION (3% of Column 4) | 284.72 |

$4,142.77

SEP-11-2007  15:29

P.03/08

PLEASE TYPE OR PRINT FIRMLY • THIS IS A 4 PART FORM.

NOTE: CONTRACTOR KEEP LAST SHEET ONLY • FORWARD OTHERS TO LOCATION SPECIFIED BELOW.

MAIL TO : CONTRA COSTA COUNTY ELECTRICAL INDUSTRY ACCOUNTS  FILE NO.25  P O BOX 8000, SAN FRANCISCO, CA 94128 ♦ (or blank)

# MONTHLY FRINGE BENEFIT TRANSMITTAL FOR HOURS WORKED
## JUNE 1, 2006 - MAY 31, 2007
### DUES, HEALTH, RETIREMENT, ELECTRICAL INDUSTRY, NEBF & NECA ACCOUNTS

EMPLOYER'S NAME and ADDRESS (Please Type or Print)

Name: 3D Technical Services, Inc.
Address: 950 Detroit Avenue #15
City: Concord, CA 94518
Telephone #: (925) 691-5543

I.B.E.W. LOCAL NO. WHERE WORK IS PERFORMED: **302**
EMPLOYER'S FEDERAL REGISTRATION NO.: 68-0481084
TOTAL NUMBER EMPLOYED THIS PERIOD → 2

Non-Union Journeyman's Wage Rate Per Hour: **$43.51**

This Transmittal Covers All Payroll Weeks Ending in Calendar MONTH of May, YEAR 2007
INDICATE NUMBER OF PAYROLL WEEKS COVERED BY THIS REPORT: 4

CLASSIFICATIONS TO BE USED IN COLUMN NO. 3

| (1) SOCIAL SECURITY NO. | (2) NAME OF EMPLOYEE (Type or Print) LAST NAME, FIRST NAME & MIDDLE INITIAL | (3) CLASS | (4) TOTAL CLOCK HOURS | (5) GROSS EARNINGS | (6) RETIREMENT CONTRIBUTION RATE | (7) RETIREMENT DUES CONTRIBUTION |
|---|---|---|---|---|---|---|
| ▓▓▓▓ | Crusder, Jonathan B. | 1 | 195 | 4484.39 | B.— | 1560.00 |
| ▓▓▓▓ | Enoch, Duncan A. | 1 | 157.5 | 7652.91 | 6.— | 948.00 |

## TOTALS

3D Technical Services, Inc.    X _____
FIRM NAME                         SIGNATURE

MAKE CHECKS PAYABLE TO:
ELECTRICAL INDUSTRY ACCOUNTS (L302)
TRANSMITTALS RECEIVED AFTER 20TH DAY OF MONTH ARE SUBJECT TO LIQUIDATED DAMAGES AS PER ARTICLE III SECTION 5A

CHECK NUMBER

FOR USE WHEN LIQUIDATED DAMAGES ARE PAYABLE TO TRUST FUND FOR DELINQUENT TRANSMITTAL.
$ _____

| | |
|---|---|
| DUES ACCOUNT (Total of Column 7) | 948 | 53 |
| HEALTH & WELFARE & NEBF ALLOWANCE (Total Column 4 x $19.38) | 3225 | 38 |
| RETIREMENT PLAN (Total Column 6) | 2205 | 00 |
| ELECTRICAL INDUSTRY APPRENTICE (Total Column 4 x $.78) | 264 | 38 |
| NECA (Total Column 4 x $.03) | 3 | 53 |
| NEBF NATIONAL PENSION (3% of Column 5) | 514 | 11 |

$ 7,454.93

## CONTRA COSTA COUNTY ELECTRICAL WORKERS
## HEALTH AND WELFARE TRUST AGREEMENT

THIS AGREEMENT and DECLARATION OF TRUST (hereafter referred to as "Trust Agreement"), entered by and between INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 302 (hereafter referred to as "Union") and the CONTRA COSTA CHAPTER OF THE NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION (hereafter referred to as "Signatory Association"), and any other Employer that may become a party hereto by entering into a collective bargaining agreement, memorandum of understanding or participation agreement providing for contributions to the Trust Fund, is restated effective August 1, 1989.

### Recitals

WHEREAS, the parties hereto are also parties to collective bargaining agreements which provide for payments to be made to this CONTRA COSTA ELECTRICAL WORKERS HEALTH AND WELFARE TRUST by individual employers in specified amounts per hour worked by employees covered by such agreements; and

WHEREAS, the purpose of this Agreement and Declaration of Trust is to provide for the establishment of a Fund, for the maintenance of a Health and Welfare Plan in accordance with the terms of the collective bargaining agreement and the Employee Retirement Income Security Act of 1974 ("ERISA") as amended, and other applicable law.

EXHIBIT "C"

3100068.WP1
000|910124

- 1 -

a determination hereunder or until such time as such regulations, rulings or decision has been rendered.

### ARTICLE III.

### TRUST FUND

## Section 1.   Amount of Employer Contributions

Each Employer shall make such Employer contributions to the Trust Fund as are required by the collective bargaining agreement or approved participation agreement.  Payments shall be accompanied by complete reports on forms furnished or approved by the Trust.

## Section 2.   Trust Liability

Except as herein expressly provided, no Employer contributing to this Fund nor the Association or Trust Fund shall in any manner be liable for, or subject to, the debts, contracts or liabilities of the Union, any Employee, or any Trustee (except in his capacity as Trustee).

## Section 3.   Procedure For Payment of Employer Contributions

The Employers obligate themselves to the Trustees to make contributions required under the collective bargaining agreements and/or participation agreements.  Payments to this Trust Fund shall be due and payable at the place designated by the Trustees and in such installments and at such times as required by the applicable collective bargaining agreement or participating agreement.  Each payment or installment shall be accompanied by a contribution report in such form as the Trustees may from time to time direct.

The payments provided for herein are due and payable on or before the date specified in the collective bargaining agreement,

or participation agreement, but if not specified in such agreement, by the fifteenth (15th) day of the current month ("due date"), and are for hours worked in the preceding month.

An Employer may be compelled by the Trust or its assignee or designee by way of subpoena, civil discovery or other legal proceeding, to prepare, submit and file with the Trust proper reports for any period for which the Employer has failed to file.

Section 4.   Delinquent Contributions

An Employer shall be considered to be delinquent if late payment or underpayment occurs because the Employer (1) fails to submit a contribution report with the full contribution postmarked by the due date; or (2) fails to submit contributions on behalf of all Employees for whom contributions are required by the collective bargaining agreement (or participation agreement); or (3) fails to properly compute the contributions according to the applicable contributions formula, or (4) otherwise fails to meet its obligations hereunder.   The Trustees or their designee may, in the event of repeated delinquencies by the same Employer, make special rules applicable to that Employer, including without limitation, advancing the due date, and/or requiring a bond or other security against future delinquencies.

Section 5.   Liquidated Damages/Costs of Collection

All parties hereto recognize and agree that prompt payment of contributions is essential to the operation of the Trust and the payment of benefits.   They further recognize that it will be extremely difficult, if not impossible, to fix the actual damages and expenses to the Trust which will result from the failure of an Employer to make timely contributions.   If, for example, an

Employer does not make regular and prompt payments to the Fund, the Trust incurs additional administrative and operating expenses in the form of letters, telephone calls, and other collection costs. Moreover, the Trust administrative officials and employees spend valuable time attempting to recover delinquent contributions. The Trust may be delayed or prevented from processing applications for employees eligible to participate in an apprenticeship program, and the trust may lose investment return it may have received had contributions been remitted in timely fashion.

Therefore, unless otherwise provided in a collective bargaining agreement, payments not postmarked by the fifteenth (15th) day of the current month shall thereupon become delinquent, and such delinquent Employer shall pay the Trust ten percent (10%) of any unpaid contribution(s) due or twenty-five dollars ($25.00), whichever is greater, as and for liquidated damages and not as a penalty plus annual interest of eight percent (8%) from the due date until paid, plus costs of collection, including without limitation attorneys' fees, accountant fees, collection fees and court costs. The Board in its discretion may periodically change the interest rate subject only to any limitations placed thereon in a collective bargaining agreement. Liquidated damages may be waived in a particular case upon good cause shown to the Trustees or pursuant to rules and regulations adopted by the Board of Trustees.

To the extent legal services are incurred in the collection of Employer contributions including the cost of appellate proceedings, such service may have no relation to the amount of the delinquency. The remedies provided herein are independent of and

in addition to other remedies available under this Trust Agreement, the Plan, the collective bargaining agreements or applicable law.

Upon the failure or refusal of any Employer to make the required contributions, the Trustees shall have authority to pay or provide for the payment from the Trust the amount of the health and welfare benefits to the eligible Participants of such delinquent Employer, but the Trustees shall not be obligated either to said Participant or said Employer to make or provide such payments and they shall incur no liability whatsoever, either individually or collectively, for their failure or refusal to do so.  In the event such payments are made by the Trustees from the Trust on behalf of a delinquent Employer, the Trust shall be reimbursed by said Employer for such payments and the Trustees shall have the authority to enforce a right of reimbursement.

In the event an Employer is delinquent in paying contributions due hereunder and/or defaults in that obligation, and as a consequence thereof the Participant(s) is (are) damaged by lost benefits, then the Employer shall be liable not only to pay contributions due and liquidated damages thereon, but in addition shall be liable to the Participant(s) for all loss suffered by the Participant(s) due to the Employer's failure to make timely payments.

## Section 6.   Recordkeeping and Audits

Each Employer shall maintain such time records, checks, check stubs, quarterly or other pertinent government returns, or such other records relating to employment for which contributions are payable hereunder, sufficient (1) to determine whether it has satisfied all obligations to the Trust and (2) to permit the Trust

to comply with all applicable laws.  These records shall be maintained for a period of not less than six years following the end of the calendar year in which the employment occurs.  If an Employer fails to keep records adequate to determine its obligations, there shall be a rebuttable presumption, at the option of the Trustees, that all sums paid by such Employer to Participants, former members of the Union, or individuals who subsequently become members of the Union were wages for covered work for which contributions were payable to this Trust.

The Board, or its authorized representatives, may require any Employer to submit to it any information relevant to the administration of the Trust, and each Employer specifically waives any privilege it may have with respect to such information.  Upon notice in writing, an Employer must permit an authorized Trust representative to enter upon the premises of such Employer at a mutually agreeable time during regular business hours to examine and copy such records as may be necessary to determine whether the Employer is making full and prompt payment of all sums required to the Trust.  Such examination may be undertaken pursuant to a routine payroll audit program or on an individual basis.  The records to be made available to the Board, or its representative, shall include, but not be limited to, time cards, payroll journals, payroll check registers, cancelled payroll checks, copies of the Employer's federal, state and local payroll tax reports, and all other documents reflecting the hours and wages of employees whether or not such documents are claimed to be privileged.

In the event that an examination of the Employer's records reveals that full and prompt payment of all sums due is not being

G100068.WP1
000|910124

or has not been made, then such Employer shall reimburse the Trust, upon demand of the Board, for the costs of said examination in addition to any other obligations it may have hereunder. The Board shall have the authority, however, to waive all or part of such costs if the discrepancy is minor and not willful, or for other good cause shown. The Employer's obligations with respect to recordkeeping and audits for the period it is an Employer hereunder shall continue for a period of six years beyond any date as of which it ceases to be an Employer.

Section 7. Collection Actions

The Trust may institute legal proceedings to collect delinquent Employer contributions, liquidated damages, interest, attorney's fees and other costs of collection, such as collection agency fees, real estate appraisal and other related costs. Such proceedings may be instituted in the name of the Trust or the Board, or the claim may be assigned to a third person for collection.

The Employer shall reimburse the Trust, or its assignee, for all reasonable attorney's fees, audit fees, court costs, interest, collection agency fees, and all other reasonable expenses of whatever nature incurred in connection with such suit or claim, including any and all appellate proceedings therein.

In the event an applicable collective bargaining agreement contains provisions relating to collections that specify additional remedies, or obligate the delinquent Employer to greater amounts of liquidated damages, interest, attorney's fees or other items than those set forth herein, the Board of Trustees, at its option, may pursue the additional remedies or impose the greater charges.

an Employer hereunder as set forth above.  The Board may establish regulations to protect the Trust in the event any Employer's participation terminates, whether voluntarily or involuntarily. Without limitation, these regulations may provide for the curtailment, in whole or in part, of benefits attributable to or dependent upon employment with the terminating Employer.  Neither the terminating Employer, its employees nor their representatives shall have any right to the return of any monies contributed to the Trust by the terminating Employer, all of which monies shall continue to be held hereunder.  Any terminated Employer shall remain liable to the Trust for any obligations incurred by it prior to the effective date of its termination, and shall maintain adequate records available to the Trust so that those obligations may be verified.

IN WITNESS WHEREOF, the parties have set their hands as of the day and year first above written.

CONTRA COSTA CHAPTER
OF THE NATIONAL ELECTRICAL
CONTRACTORS ASSOCIATION

MICHAEL GELLER

Dated: _January 24, 1991_

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, LOCAL
UNION NO. 302

WAYNE WHITEHURST

Dated: _1/24/91_

Accepted By
Board of Trustees

EMPLOYER TRUSTEES

Dated: _January 24, 1991_

UNION TRUSTEES

Dated: _Jan. 24, 1991_

100068.WP1
00|910124

- 49 -

## IBEW LOCAL 302 TRUST FUNDS LIQUIDATED DAMAGES REVIEW AND ASSESSMENT OF COST OF COLLECTION (CURRENT COLLECTION PROCEDURE)

IBEW Local 302 Employee Benefit Trust Funds have a unified collection policy and procedure whereby all the contributions due to the Trust Funds are submitted on a single transmittal and collection is pursued for all the amounts due on that transmittal. Payments are due on the 15th of the month, and if they are not postmarked by the 15th, liquidated damages of 15%, plus interest at 10%, may be assessed.

Failure to pay contributions by the 15th results in a demand letter sent by the 25th of the month. If a contractor is still delinquent, it is turned over to collection counsel by the end of the month, or earlier, if necessary.

The Trustees have a policy for reducing and waiving liquidated damages. They may waive liquidated damages or reduce liquidated damages to as low as 5% if payments are made prior to filing a lawsuit. The Trustees also have discretion to waive all or a portion of liquidated damages based on a waiver request of the employer. The Trust Funds have a policy of waiving liquidated damages one time in a 12 month period, upon a satisfactory explanation of the delinquency by the delinquent contractor. The same waiver policy applies to the waiver of interest prior to a lawsuit being filed. Considerations in waiving or reducing liquidated damages can include consideration of employers who are chronically delinquent, employers that have failed to follow prior settlement agreements, and whether or not they have submitted the actual transmittal reports with or without the money, and whether or not they may be filing bankruptcy or are otherwise in financial distress.

In addition to the standard policy for collection of delinquent contributions, contractors also have a payroll audit policy whereby all companies are audited on a random basis over a five year period. A copy of the collection policy and the audit procedure is attached to this evaluation.

## EVALUATION OF COLLECTION COSTS (Administrative Offices)

The Trustees of the Trust Funds requested that the administrative office, in conjunction with the attorney and auditor, evaluate the collection costs and time spent in collecting delinquent contributions for the Trust Funds. They were asked to determine if the liquidated damages assessment policy is an accurate estimate of prospective collective costs.

1

EXHIBIT "D"

The administrative office determined the following actions are taken to collect delinquent contributions. Liquidated damages are assessed for any payments postmarked after the 15th of the month because it is necessary for the administrative office to distribute credits to all the employees and close the books by the end of the month. A delay of even one contractor can result in a delay of closing and additional costs and time spent by the administrative office.

If a contractor is late, the following actions have to be taken immediately:

1. The administrative office which handles the transmittals notifies the union of the delinquent employers and the employers who have paid late.

2. A delinquency list must be prepared.

3. Delinquent employers must be contacted by phone and delinquent notices sent to all employers.

4. Interest, lost interest, and liquidated damages must be calculated.

The administration of the Local 302 Trust Funds is divided. The union is paid by the Trust Funds for 30 hours of administrative time per month at the current rate of $2,504.98 to handle notices to delinquent contractors, correspondence between employers regarding delinquencies, preparation of the delinquency list, and interaction with the attorney on delinquent contractors. In addition to this, other work indirectly related to delinquent contributions is also handled at this office. This includes calculations for COBRA payments and COBRA notices, and the preparation of reciprocity between unions. The work performed by the union office related to collection of delinquent contributions is approximately two-third of the time the office staff spends on Trust Fund work.

Estimated Time: 15-25 hours per month. If a large number of delinquencies or a large contractor becomes delinquent, this could be even more.

The Trust Fund administration is handled by Cummings and McMullan. Late payments of Trust Fund contributions may result in the following extra work and damages.

1. Employees lose their health care coverage.

2. Health care claims have to be denied due to loss of eligibility.

2



3. The union office and the trust fund office both have to field telephone calls from providers, emergency room hospitals, and pharmacies regarding eligibility questions for health and welfare.

4. Health and welfare claims have to be processed retroactively when the payments are received.

5. COBRA letters must be sent to participants who have lost benefits because a contractor has not paid.

6. Often participants who lose benefits for health and welfare cancel appointments which can never be recouped because of late payments.

The time spent on the above activities increases dramatically with the greater the amount of the delinquency and the number of participants involved.

In regards to health care eligibility, the more employees the delinquent contractor has, the more time spent fielding eligibility calls and concerns from both providers and participants.

Estimated Time and damages: one to 30 hours per week, depending on the number of participants involved.

**PENSION PLAN.**  Additional work and damages often results for late payments as follows.

1. The pension plan cannot credit pension benefits.

2. Participants lost interest on pension benefits not credited.

3. Pension technicians are unable to calculate benefits for participants who apply for retirement during the delinquency.

4. Pension contributions must be charged retroactively, including lost interest which results in considerable additional work by the administrative office.

5. Credits for vesting and benefits must be calculated when late payments are received.

3



**ESTIMATION OF TIME SPENT.** These costs are directly related to the number of employees and the size of the delinquency. As the number of employees not receiving pension benefits increases, the number of phone calls, explanations, and work increases proportionately.

Estimated Time Spent: 1 - 20 hours per month, depending on delinquency.

## EVALUATION OF COLLECTION COSTS (BOARD OF TRUSTEES).

The Board of Trustees spends time at every meeting dealing with delinquencies. The larger the delinquency, the more time the Trustees spend at the meeting. Collection reports are made for each meeting, and actions taken on these delinquencies regarding collections, waiver of liquidated damages, etc. Union Trustees must field calls from members and work with collection attorney and administrative office to determine amount of delinquency, etc. For large delinquencies, a collection subcommittee may be needed to address the problem involved.

Estimated Time Spent: 15 minutes to 2 hours per month.

## EVALUATION OF COLLECTION COSTS
### (Attorney)

The collection policy requires that the collection attorney be involved with the delinquency within 30 days after payment is not received. The collection attorney takes the following action on a monthly basis.

1. Receives a copy of the collection delinquency list, prepares a delinquency report for the Board of Trustees.

2. Attends trust meetings for a review of the delinquent contractors.

3. Sends demand letters to the delinquent contractor.

4. Makes phone calls to the delinquent contractor.

5. Works directly with the union regarding delinquencies.

4



Often delinquent contractors are delinquent because they do not have the money to make payment and other avenues of collection rather than filing an ERISA complaint in federal court must be made. These include,

      1. Making arrangements for joint checks, filing liens and stop notices.

      2. These types of actions are very time intensive requiring contacting the union and employees for payroll information and locations where they were working.

      3. The attorney must also notify the employees of the delinquency and requests job site information.

      4. File mechanic's liens and stop notices, complaints in state court. Often, liquidated damages, attorney's fees and costs are not collectable from these third party payors.

Estimated Time Spent at $175.00 per hour: 1-3 hours to 75-90 hours, depending on the amount of the delinquency.

## EVALUATION OF COLLECTION COSTS
### (Auditor)

**AUDIT PROCEDURES.** The Trust Funds have a unified audit procedure which involves auditing all of the contractors over a five year period. If the audits do not show any discrepancy, no action is taken and the audit cost is borne by the Trust Fund. The audit procedure is instituted to insure correct payment. The Trustees and the auditor spend considerable time performing the audits, reviewing the audit decisions before any delinquencies found in the audit are turned over to the attorney for collection. These costs are not recouped.

Estimated Costs: _____

The above are only part of the expenses incurred by the Trust Funds in collecting delinquent contributions. These costs are very difficult to quantify as they vary substantially from delinquency to delinquency.

**INDIRECT COSTS**. In addition to the above costs, there are other indirect costs which are even more difficult to quantify. For example,

1. Employers that pay on time are severely penalized by employers who chronically make delinquent payments and use the trust funds' assets to their benefit.

2. There is no incentive for employers to pay on time if there are no consequences to late payment, which results in increased chronic late payers, lost interest to the trust funds, and the time spent by the administrative office, trustees and attorney as described above.

3. If more than one or two large employers are delinquent in any one month, it can seriously jeopardize the ability of the administrative office to function at all; to close out the books, and adequately credit all the employees' hours. This may result in additional overtime work and could jeopardize the payment of employee benefits to the employees.

The damage to the Trust Funds because of the penalization of employers who pay on time, and the lack of incentive of employers not to pay on time if there are no consequences far exceed the above estimate of actual hours spent due to chronic delinquencies. Without a policy for any liquidated damages assessed, the situation could easily become intolerable.

Based on the foregoing, the Trustees have reviewed their liquidated damages procedures and make the following revisions and recommendations to their liquidated damages procedures which they feel adequately reflects a reasonable estimate of the projected costs of collecting delinquent contributions.

<u>CONTRA COUNTY ELECTRICAL WORKERS RETIREMENT PLAN</u>
<u>ELECTRICAL WORKERS HEALTH AND WELFARE TRUST FOR CONTRA COSTA COUNTY</u>

### COLLECTION PROCEDURES

Pursuant to the Trust Agreement, the Trustees of the Contra Costa County Electrical Workers Retirement Plan and the Electrical Workers Health and Welfare Plan for Contra Costa County adopt these restated Collection Procedures as of May 1, 2000. These procedures are intended to be consistent with the Inside Wireman Agreement between IBEW Local 302 and the Contra Costa Chapter, NECA.

## I.   Payroll Audit Policies and Procedures

A.   <u>Random Payroll Audits</u>.  Pursuant to ERISA and generally accepted auditing procedures, it is the Plans' policy to perform random payroll audits of contributing employers to ensure that sufficient contributions are being made to the Plans.

With input and recommendations from the auditing firm responsible for payroll audits ("payroll auditor"), the Trustees will establish a random payroll audit program annually or for multi-year periods. Each year a specified minimum number of employers, including both large and small employers, will be randomly audited.  It is anticipated that under the random audit program, each contributing employer will be audited periodically (e.g., every five years).

When a payroll audit reveals a shortage, the auditor will send a notice to the employer itemizing the amounts due.  The Plans will pay for such audits except that when an audit reveals any delinquency of a particular employer, that employer is required to reimburse the Plans for the cost of the audit.

B.   <u>Special Payroll Audits</u>.  The Plans are also authorized to audit particular employers when deemed necessary or advisable. In particular, if the Plan has reason to believe that an employer might be delinquent or in financial  distress, the Plan may audit the employer.  Additional reasons include but are not limited to an alleged reporting difference raised by a covered employee; late reporting; withdrawal  from  or  expiration  of  the  collective bargaining agreement; change in organizational form of business; financial difficulty or potential or actual bankruptcy.  The Plans will pay for these audits except that when an audit reveals a delinquency, the employer is responsible for the audit cost.

## II. Identification of Delinquencies

A. An Employer is considered delinquent as follows:

1.  <u>Failure  to  Make  Timely  Contribution  or  Report</u>.   The Transmittal Report evidencing Covered Employment and the employer

DG1CCCP.RKG
82611000427
30302.400

contribution must be <u>received</u> by the Plan Office by the <u>15th day of the month</u> following the month in which the work was performed. A "postmark" date by the 15th is not satisfactory. A delinquency also exists if a contribution was made but not for the full amount.

2. <u>If No Transmittal Report is Received</u>. If no Transmittal Report is received, the Employer is considered delinquent. Administrative, auditing and legal fees incurred as a result of the failure to file such a Report may be assessed against an employer.

3. <u>A Non-Negotiable Instrument</u>. An employer is delinquent if a payment is in the form of a non-negotiable instrument.

4. <u>Bounced Check</u>. An employer is delinquent if a check or other instrument bounces because of insufficient funds or other reasons, unless a valid replacement check is <u>received</u> by the 15th. (Bounced check fees are assessed against the employer.)

B. <u>Liquidated Damages and Interest</u>. If a required contribution has not been received by the Plan Office by the 15th of the month, liquidated damages of 15% and interest of 10% as provided in the collective bargaining agreement, are added to the delinquent principal. Interest charges continue to be assessed on the delinquent contributions, liquidated damages, attorneys fees incurred and other charges, until paid.

C. <u>Demand Letter-By 25th of Month</u>. The Union will send a delinquent employer a delinquency letter by the 25th day of the month (or the first business day thereafter) in which the contribution was due demanding immediate payment. The letter warns the employer that if the delinquent contribution, liquidated damages and any other charges are not fully paid by the end of the month (or other specified date), a lawsuit will be filed.

## III. Collection Counsel's Responsibilities/Settlement Issues

A. <u>Referral to Collection Counsel</u>. Delinquencies are turned over to Collection Counsel if an employer has not paid the full contribution by the end of the month; however, the Trustees have the discretion to refer matters to Collection Counsel at any time.

The Union, in consultation with the Plan Office, provides Collection Counsel with a status report on a delinquency, including the period of the delinquency, the estimated amount, liquidated damages, interest, copies of any payroll reports submitted during the delinquency (or immediately before the delinquency if none were filed during the delinquency), the Collective Bargaining Agreement for that employer, job site information, name of general contractor (if applicable), and other pertinent information.

B. <u>Lawsuit</u>. Collection Counsel will send a demand letter to the delinquent employer notifying the employer that if the employer does not immediately pay all amounts due, a lawsuit will be instituted to collect such amounts. If the employer does not pay the delinquency and other charges by the date designated by

DG1CCCP.RKG
75111000427
30302.400

Collection Counsel or otherwise propose a reasonable settlement offer, Collection Counsel is authorized to file a lawsuit.

Collection Counsel has the discretion, if there is agreement from both the Chair and Secretary, to delay filing a lawsuit if such delay is in the Plans' best interest.

C. **Settlement/Litigation Questions and Concerns.** If a question arises regarding a settlement, possible litigation or other disposition, Collection Counsel will consult with the Plans' Chair and Secretary to determine a course of action.

1. **Referral to Chair and Secretary.** Settlement proposals that require immediate action between Trust meetings will be referred to the Chair and Secretary. This may include settlements involving an employer in bankruptcy (or who is about to file for bankruptcy) or situations in which the Union may be pulling its members from a job, among other possible situations.

2. **Settlement Proposals/Bonds/Special Rules.** Settlements which require a payment schedule should provide for full payment within twelve months, with interest; however, the Trustees have the discretion to approve payment schedules in excess of one year in special circumstances. Moreover, it is the Trustees' policy that settlements require a personal guarantee from an individual (i.e., usually the principal of the business) or other collateral deemed acceptable to Collection Counsel or the Chair and Secretary.

The Plan or Union may, at any time, call on a delinquent employer's bond as part of any delinquency, collection action or settlement.

The Trustees may establish special requirements for employers which have significant or repeat delinquencies or other problems.

D. **Liquidated Damages**

1. **Liquidated Damages – Before Lawsuit.** Pursuant to the collective bargaining agreement, liquidated damages of fifteen percent (15%), but not less than $20.00, are assessed against a delinquent employer. When principal payments are paid prior to a lawsuit being filed, the Plan may accept liquidated damages of as low as five percent (5%). When the principal is paid but not the liquidated damages, the Plan Office may apply current or future principal payments to the liquidated damages (leaving a balance of principal). The Trustees have the discretion to waive all or a portion of such liquidated damages in special circumstances.

2. **Fifteen Percent Liquidated Damages–Lawsuit.** Pursuant to the collective bargaining agreement, liquidated damages of fifteen percent (15%) are assessed. As part of a settlement, the Trustees have the discretion to waive a portion or all of such liquidated damages, although waiver would be rare once a lawsuit has been filed. Waiver of liquidated damages would require extenuating circumstances and the employer's promise to remain current on its contributions for a minimum of twelve consecutive months.

3.   <u>One-Time Waiver</u>.  If a delinquent employer pays the principal prior to referral to Collection Counsel, and the employer has not been delinquent during the prior 12 months, the Chair and Secretary may, at their discretion, waive the liquidated damages upon the employer's written request, which includes a satisfactory explanation for the delinquency.

4.   <u>Waiver When Only The Report is Late</u>.  When an employer is late in submitting a Transmittal Report but the correct amount of principal was timely paid, the Plans may waive the liquidated damages, but only on a one-time basis during a 12 month period.

E.   <u>Interest</u>

1.   <u>No Legal Proceeding</u>.  Pursuant to the collective bargaining agreement, interest of 10% is assessed for late payments.  If the principal is paid prior to a lawsuit having been filed, the Plan may reduce the interest charged to as low as five percent (5%) upon a written request of the delinquent employer setting for a satisfactory explanation for the late payment.  In special or unique situations, interest may be waived in its entirely (upon approval of the Chair and Secretary).

2.   <u>Legal Proceedings Instituted</u>.  If legal proceedings are instituted, interest will be assessed in accordance with these procedures.  The current rate is 10%.  As part of a settlement, a portion or all of the interest owed may be waived at the sole discretion of the Board of Trustees or the Board's delegate.

F.   <u>Attorneys Fees and Administrative Costs</u>.

A delinquent employer will be required to reimburse the Plans for the legal fees incurred by the Plans as a result of an employer's delinquency even if the employer eventually pays in full prior to a lawsuit being filed.  The Chair and Secretary have the discretion to waive such fees in special circumstances.

Administrative and other costs may be assessed against an Employer when additional administrative services or support is required pertaining to a payroll audit, delinquency or collection action.

## IV.  Exceptions to Procedures/Special Rules

The Trustees may make an exception to these procedures for employers that are chronically delinquent, which have failed to follow prior settlement agreements, which have failed to timely submit Transmittal Reports, or which are in or are likely to file for bankruptcy or otherwise are in financial distress.

The Trustees have the discretion to delegate to the Chair and the Secretary (and in some situations, Collection Counsel) to make decisions regarding collection and audit matters.

DG1CCCP.RKG
75111000427
30302.400